Last case on our calendar for argument this morning is number 19-2720, Woodstock Venture LC v. Woodstock Roots LLC. Mr. Sperl. Good morning, Your Honors, and may it be in your court. My name is Andrew Sperl. I represent the appellants in this case whom I will refer to collectively as Woodstock Products. The basic issue in this underlying litigation is which party, and I'll speak of each set of parties collectively as a party here, which party gets to use the Woodstock mark on cannabis and cannabis-related products, and as you can imagine, that's a question that is increasingly important as these products are subject to restrictions. Both parties in this case have used the Woodstock mark for a long time. It's not just appellees whom I will collectively refer to as ventures that have used this mark. We, in fact, have also used this mark for decades going back to the 1980s. This appeal presents an even more limited question than the litigation overall does. The specific issue in this appeal, because this comes out of our motion for preliminary injunction, the specific issue in this appeal is whether or not ventures' use of the Woodstock mark on cannabis infringes our rights, which we have by virtue of federal trademark registration, actually two registrations for smokers' articles. There's two basic legal issues here. One is the extent of priority rights that we have in that mark, and the other issue is whether ventures' use of the mark creates a likelihood of confusion. Council, would you agree with respect to priority that your registration rights only give you constructive use priority with respect to exactly the uses specified in the registration and do not extend further, that with respect to other uses, you're going to have to rely upon actual use? I think the answer to your question is yes, if I understand your question, but let me make sure I understand and why that is not an impediment to our case. So no party can have trademark rights in cannabis itself because cannabis is federally illegal. So we're not premising our case here on trademark rights that we have in cannabis itself. We could not have gotten a registration in that nor can ventures. And neither party's use of the mark in that space can create federal trademark rights because it's federally illegal. We have rights by virtue of our registration in smokers' articles, and under the doctrine of related goods, we have protection against infringement of those rights on related goods. And we would argue in the record supports that cannabis products such as venture sales are goods that are related goods to the smokers' articles that we have rights in. So that's how we structure the case, and that's why our case follows from the rights that we have specifically in smokers' articles. I'm sorry, and I appreciate you're trying to explain this. I found myself getting tied up in knots in this. Are you suggesting that you are disclaiming the actual trademark rights with respect to cannabis? Well, it's not so much that we're disclaiming it. It's that as a matter of law, a party can't have federal trademark rights based on an illegal use. So it's not that we're disclaiming it or saying that at some point we wouldn't have the intention to use the mark on that, but that's not the basis of the rights that we're focusing on for purposes of this case and this preliminary injunction. Those follow from our registered trademark rights in smokers' articles. But that's what I'm saying. Are you suggesting, though, that you have rights in smokers' articles and that there is some spillover right that's going to spill over into cannabis? Or are you saying, don't worry about cannabis, we're not claiming that right, we're only claiming the violations with respect to the smokers' articles? No, we're claiming violations with respect to the cannabis, but that's because cannabis is a related good, and so there's a likelihood of rights as to the cannabis. Yes. You're not saying that they are rights that are derived directly from your registration? Right. That's a good way to put it, Your Honor. The rights that we have are rights to prevent an infringing use by confusing use in cannabis. So we do have rights to exclude in cannabis because that creates a likelihood of confusion with our smokers' articles rights. So we are on abuse of discretion review, right, on the denial of a motion for preliminary injunction? Yes, Your Honor. There is a de novo aspect of it, which has to do with how the Polaroid factors are ultimately weighed, but yes, Your Honor, you're correct. It's abuse of discretion. Can you point out to me in what respect the district court clearly erred in its factual findings in applying the Polaroid factors? I was struck by district courts repeatedly observing that your client had not adduced much by way of evidence supporting the factors, supporting the use and the display and advertising, and so I'm looking for a discussion about where the clear error occurred. So, Your Honor, we would focus on identifying the district court's error. We would focus on the first three elements of the Polaroid factors because those are, I think it's agreed upon, those are the most important Polaroid factors. Now I'll try to go through those, you know, pretty quickly, but feel free with questions. I'll start with the strength of the mark, and here I would argue that the district court erred in giving very little or no weight to the fact that the mark is agreed upon by both parties to be arbitrary, which is the highest level of conceptual distinctiveness. The district court, of course, held that there was too little commercial distinctiveness of the mark, but we would submit that that is error here in this case. In particular, if you look at authorities that are cited by ventures, there are, you know, a number of authorities cited that hold that it is appropriate to consider commercial distinctiveness of a mark in a Polaroid analysis. And what I'm looking at in the district court opinion, he's examining commercial distinctiveness and points out that defendants provide no details concerning their alleged display of advertising, that most of the evidence of the record comes from, you know, testimony in the hearing, but very little actual display and no evidence showing that it is commercially strong. So there might be to rebut that. So first of all, there was evidence of expenditures that we've undertaken to implement a business plan that the district court didn't acknowledge in its opinion. The new entrance to the cannabis and related goods, you know, aspect of the market here. And part of the reason that there isn't more evidence on this, frankly, is because, you know, we're relatively new and we've been impeded from implementing a business plan, in part because this issue of trademark rights for cannabis is unresolved. Well, so doesn't that suggest that there might not be enough overall to support a preliminary injunction and that the district court was correct? I mean, it is brand new. Well, I would suggest, first of all, the district court should not have relied as heavily as it did on the case law factors, because I would suggest they're a bit in opposite here, where you have a party who's relatively new, but nonetheless has trademark rights that it's entitled to enforce. We do have federal trademark rights that we're entitled to enforce. And so those shouldn't be defeated just by virtue of the fact that we're relatively new in the market. The other thing that I would suggest is that the cases cited by ventures for the proposition that you have to look at the conceptual distinctiveness of the mark, or excuse me, the commercial distinctiveness tend to involve marks that are not as conceptually distinct as this mark is. And so, Council, in your analysis of the Polaroid factors, where would you place commercial distinctiveness? Does it have a role with respect to a mark that is arbitrary, or does it fit somewhere else under the Polaroid analysis, or how does one think about it? Well, I'm not going to argue that it has no role, but for instance, if you look at the McGregor Doniger case that's cited by ventures there, it's almost described as something that will usually work in favor of the senior user, which for purposes of this motion, we are the senior user. So I would suggest that the district court erred in applying the factors that it did to relatively new entrants in a way that prevents us from enforcing our mark. The other thing that I want to point out about this, by the way, is just the discrepancy in the district court opinion. In the body of its opinion, it actually says that this factor weighs modestly in our favor, but if you look at page 19 of the district court's opinion, it says that the strength of the defendant's marks weighs against us. And so it's actually unclear what the district court was deciding. I do see I'm over time. I would like to touch on two of the other factors, but I don't know if that's... Why don't you take another two minutes? Okay. Thank you, Your Honor. We'll give the same courtesy to your opponent. Thank you, Your Honor. With respect to the similarity of the mark, it's undisputed that the marks here consist of the identical words. There is case law suggesting that you look at how the words are presented in the marketplace. But if you look at, for instance, the Virgin Enterprises cases, which we cite, it points out that where the words are the same, if that's how people will encounter them in the marketplace, it still creates a likelihood of confusion. Let me ask, though. The district court said it's appropriate to consider the size, logo, typeface, and package design. He says there's little evidence here as to those factors, and defendants have offered no evidence as to how their mark is typically displayed. So on what basis could he find... You're saying he should just look at the word Woodstock and disregard its typical presentation in the market? Well, one piece of evidence that is in the record, Your Honor, and this is actually testimony that was elicited by Ventures, is that... And this is on page 1332 of the record. There's testimony by Ventures that a publisher of a magazine was confused by someone who was approached suggesting that they work together on Woodstock-branded cannabis products. And obviously, Ventures has put in this evidence to make their showing of a likelihood of confusion, but that just shows how if you hear just the word Woodstock, you could be confused, much as... Still, it was your burden. You were seeking the preliminary injunction. Well, I don't think that we would be precluded from pointing to evidence that came out regardless of who the questioner was at the hearing. I mean, the district court did have evidence of how these products looked. Can I just ask you, could you do me a favor and just help me? In terms of distinguishing, do you have different claims as to the smoker's articles as opposed to the cannabis? I can see potential distinctions in the record. And frankly, it seems like your claims are relatively, well, depending on how you want to look at it, either weaker with respect to the cannabis, but I'm guessing that all the money here relates to the cannabis. I don't know how much money you're going to make off Zippo lighters. But can you tell me whether you have any argument that could nevertheless be sustained with respect to the smoker's articles as to which you actually have a registered trademark? Well, I think that we could. For instance, the proximity of the marks analysis would be different. The court held that there was no proximity of the marks because they were different kinds. And I think that that misunderstands the fact that we can prevent infringing use even on related goods. But of course, the district court's finding there that these products are different types would certainly be wrong if you're just looking at smoker's articles versus smoker's articles. So that's one way in which they could be different. OK, fine. You have reserved a couple of minutes of rebuttal. So why don't we hear from Mr. Colbert now? Thank you, Your Honor. And Mr. Colbert, please take an extra two minutes, OK? Thank you very much, Your Honor. If it pleases the court, I'd like to start out and take a minute to try and sort of unshuffle the deck here, echoing Judge Nardini's comments about the briefs tying him up in knots. That's because the briefs address issues completely irrelevant to the point on appeal. First of all, they start out in their briefs arguing the question of priority and insisting at page, I think, 11 and all the way 39 through 44 of their opening briefs that this court needs to rule in favor of the appellant on priority. Below, Judge Gardafe did not specifically rule on priority, and he said he was avoiding priority because he didn't need to decide that issue. Now, the second point that they sort of confuse things here is that they spent a lot of their brief, again, some of the same sections. They spent time in their brief arguing as to what the strength of ventures, the appellee, what my brother, Mr. Spurl, calls ventures and what the in the in the Polaroid analysis. Counsel, let me ask you a question. Assume that the shoe was on the other foot and the appellant here was trying to market, let's say not a cigarette with marijuana in it because it's disclaimed authority, say not a tobacco cigarette, but an herbal cigarette. And, you know, I understand you're claiming that you've got priority with respect to smokers' accessories. Would your position be that there would be no likelihood of confusion between their herbal cigarette marketed Woodstock and your smokers' products with Dove and the guitar? Well, Judge Lyman, it's very hard to address a sort of a naked hypothetical without the entire record. But I would say the issue here is the strength of the ventures mark Woodstock would come into play if we were the party making the motion. The confusion here is that ventures is the original plaintiff. They entered the market 20 months before the motion was filed. They put the appellants on notice of our claims 13 months before the motion was filed. We actually sued the appellants six months before the motion was filed. And then all of a sudden in August 27 of 18, it flipped around and we're facing my client is facing a preliminary injunction motion. And that's why there's all this confusion. The issue of what the scope of my client's rights are would be tried below in the under the complaint. It's not an issue before this court. And I can't answer. I don't see how we can avoid the priority issue. I know that Judge Gardefee avoided it by assuming that the appellant had priority. But isn't the priority issue implicit in a number of Judge Gardefee's rulings with respect to likelihood of confusion? Well, let me address that. The issue of priority, remember, it's not based on any use by the appellants. In fact, while my brother said they've been in the business since the 1980s, the only issue for this court is the fiction of a constructive date of first use for Smoker's Articles back to 2013. Right now, when you look at constructive use in an intent to use application under 15 U.S.C. 1057B, a certificate of registration on the principal register is prima facie evidence of the owner's exclusive right to use a registered mark on or in connection with the, and this is a quote, goods or services specified in the certificate, Smoker's Articles. It does not extend beyond anything else. It doesn't extend to herbal cigarettes. It doesn't extend to marijuana, cannabis. It does not go there. That's because the question of trademark strength stems from actual use. The second question is for an ITU application, if you want to look at priority, and this is one of the things that's been raised below, one reason why Judge Gardefee did not address priority. For an ITU application to actually be valid, the party filing the application has to have an intent to use the mark on the goods at the time of the registration, the 2013 application, specifically testified at the hearing that he had no intent whatsoever to use this mark in connection with cannabis or marijuana. Therefore, there cannot be any good faith use. That's an issue that would go to priority, which again, Judge Gardefee did not decide because it was unnecessary because he made the decision based on likelihood of success of the merits. Now, I would say some of these issues also go to the next step, which is proximity in the market, similarity of goods. If what we're talking about is Smoker's Articles, versus cannabis. Remember, it's not Smoker's Articles versus Smoker's Articles. Why is it not? My impression is that I covered both, but again, I might be confused here. I was thinking that the preliminary injunction was designed to decide whether, in this case, your clients were somehow infringing the mark, both with respect to Smoker's Articles and with respect to cannabis. Again, I get it that the money is in the cannabis, but we're asked to decide both. Is that not true? Are we only being asked to decide if there's infringement with respect to cannabis? Yes. That's all you're asked to decide. That's all that Judge Gardefee below was asked to decide. For example, that's why he didn't have to look at priority. If you were talking about Smoker's Articles versus Smoker's Articles, therefore, they're the same products, you'd have to decide priority. That's what Judge Gardefee's opinion states. He's looking at marijuana versus Smoker's Articles, and those are different goods. You have to consider the issue about whether or not the goods are sufficiently related. Now, the argument that was raised below before Judge Gardefee and Judge Gardefee says in the first page of his decision is that appellants were claiming that they had rights in marijuana because of the existence of the Smoker's Articles registration. Now, Judge Gardefee, correctly, that he didn't need to decide priority because when you're looking at similarity of goods, two things. One, marijuana or cannabis is not the same thing as Smoker's Articles. Number two, they had specifically to disclaim any rights in marijuana or cannabis to get the registration. With respect to both parts of that argument, the test for proximity is not are they the same thing. It's are they the same genre. I don't read our cases as saying that a party can avoid the proximity issue by disavowal with respect to a particular product. If the question is confusion as to source, how does the disavowal of manufacturing a marijuana cigarette go to the genre issue and confusion as to source? Okay, well, there's two things. That's why there's confusion and why perhaps why Judge Nardini commented about being tied knots. For example, if the shoe were on the other foot, if we had tried the case below and a decision was being made by Judge Gardefee at trial on the merits of the complaint, then the issue you would look at is would the sale by appellants, in this case, we refer to them as products if that's fair. If sale by products of either cannabis or Smoker's Articles, but let's just stick with cannabis because that's the consumers. Remember, the issue here is would they be associated in the minds of the consumers with the plaintiff? If products were selling Woodstock branded marijuana, which they clearly want to do, but consumers seeing that would associate it with my client, Woodstock Ventures, because of its history of running music festivals, videos, books, and that sort of thing. If they would associate it, then yes, my client, Woodstock Ventures, would be entitled to an injunction against the use by Mr. Sperl's client products, but that's not the point before this court. Judge Gardefee identified quite clearly that they were trying to assert affirmative rights to enjoin the plaintiff, which is my client Ventures in the case, based on their registration, their intent to use application based on the fiction of constructive first use state, which would never have issued, and therefore would never have been an issue in this case, and could not have been asserted in this case, had they not explicitly disclaimed any connection with marijuana. Therefore, he declined to extend rights to products on that basis, and I think not only did they explicitly disclaim it, but as I already quoted to the court, the person who filed that application disclaimed any intent to do at the time he filed it, so as a matter of law, had they not even had to enter the disclaimer with the USPTO, which still not have been supportive, because they did not have bona fide intent to use on the goods for which they're asserting rights at the time of the application, and that's sort of the difference. That's why you have to understand that this whole case has been flipped on its head. In terms of strength, the argument, I'll touch on that briefly, if I may, counsels argued that Judge Gardefeu made an error by not ruling in favor of his client on a question of strength. Now, Judge Gardefeu did find that the question of strength modestly favored the appellants in this case. However, Mr. Sperl is correct that at the end of the day, at the end of the conclusion, Judge Gardefeu concluded that all of these factors, including the strength factor, did not support the issuance of preliminary injunction. Now, they do not dispute any of the findings of Judge Gardefeu as to whether they had any goodwill, recognition in the marketplace, advertising, et cetera. He does not dispute any of that. The dispute is somehow that Judge Gardefeu erred simply in looking at the question of commercial strength, and I think this stems from sort of a fundamental misapprehension of the For example, they cite Hasbro. Now, they talk about secondary meaning. When you look at a mark, you say, is there a mark? And two, what is the strength mark? So if there's a mark, you look at what they, including Judge Friendly, you have this continuum. Is it generic? Is it descriptive? Is it suggestive? Is it arbitrary? Is it coined, for example? And the breaking point is between descriptive and suggestive. If it's inherently distinctive, then you don't need to which recites that very simple rule, which we do not dispute, and all the cases support it. Hasbro goes on to the very next page of that opinion, page 76, I believe, says, however, now you need to look at the commercial strength in the marketplace, because that's what you look at, is what are consumers going to take away from this? Will the use of this mark likely to cause confusion and strength, as opposed to secondary meaning, which is what you look at? Counsel, if we accept your argument that commercial distinctiveness can qualify the distinctiveness of a arbitrary mark, aren't we effectively permitting somebody to appropriate a distinctive mark of a new entrance at really at the get-go? And are there any cases that you're able to cite from this court where a arbitrary mark has been found not to be distinctive because of the volume of marketing? Let me back up. This is why I want to make a clear distinction here. If you have an arbitrary mark, it's distinctive. Unless it becomes generic, it's distinctive, and nobody disputes that. The question is, what is the breadth of your coverage? For example, you have Coca-Cola. I think Coca-Cola would not ever have any intent to sell marijuana. It hasn't sold more marijuana. It hasn't announced it's going to sell marijuana. I think there would be anathema to Coca-Cola. Nevertheless, if somebody tried to sell Coca-Cola marijuana, they could clearly object to that and get an injunction. In this case, yes, if there's an arbitrary mark and a senior user, you're suggesting a senior user preempts the new user's mark in some way? I'm not sure what the court's mark is. Let's say it's the appellant in this case. You're second. On the record before us, you don't have priority. You decide all of a sudden you're going to come into an adjacent market and do a lot of marketing after they've already registered an arbitrary mark. Aren't you arrogating to yourself rights that the trademark law doesn't give you the right to? No, Your Honor. What you described is what we call sort of in our trade, reverse confusion. You're absolutely right. You have reverse confusion. So if I'm a new user and I come in and try and overwhelm or swap the senior user with marketing so that people recognize or believe the mark belongs to my client, yes, that's actionable. You can file an action on the landmark for that. You do an analysis on a reverse confusion. And if you're correct, you win. But that's what I mean. You've got to go back basically to try the facts of this case. And to answer Your Honor's other question, is there any cases besides the ones we cited in our briefs in Jules Limited versus Macy's Merchandising Group, 695 Fed Appendix 633-638, which is a 2017 decision of this court, the district court had found that Jules was inherently distinctive and therefore conceptually strong, but that there was evidence that the mark was weak in the marketplace. This court then found it was not an error for the district court to find that the commercial weakness of the Jules mark undercut the inherent strength. And that's not the circumstance where the junior user comes in and tries to overwhelm or swap the senior user. That's not what's going on here. And that's what happened in Jules. The question is, do you look at it? In fact, this court has found in streetwise maps, as one example cited in our briefs, which is a 1998 decision in this case of this court, the court had found it the error for a district court to have considered a mark to be relatively strong based on conceptual strength when it's not strong in the marketplace. So clearly, the decision of this court for the last 20 plus years have been, you look at strength separately from the question of whether or not secondary meaning is required to show that the mark is actually a mark at all. I'm sorry, I ran over. I'm sorry. That's quite all right. You were answering our questions. Thank you very much for your arguments. We'll hear rebuttal. Mr. Spurl. Thank you, Your Honor. Just a couple of points. First of all, with regard to Judge Nardini's questions and why is priority relevant, just to make sure that we're on the same page there, it is relevant that we have priority rights in Smoker's articles, because that's the basis for our claim here. That's based on not just our intent to use application, but that application has matured into two separate registrations that continue to be valid registrations. I would also argue that there was no what I would term to be a disclaimer made. I understand a disclaimer to be, for instance, when part of a mark is unprotectable, like part of a word is unprotectable, and so that is cannabis, because again, our case here is premised upon the fact that Venture's use of the mark on cannabis, it's on a related good, and so we can protect that. With regard to the strength of the mark, or actually one thing I would just like to touch on before that is related to the procedural posture of this case. What precipitated our preliminary injunction motion here, it was not some sort of gamesmanship. This was precipitated by a deal that Venture's entered with MedMen, which is a seller or a distributor that basically would have allowed them to get into a lot more states very quickly and really thwart the business plan that we had at that point. Judge Sweet, when he was presiding over this case, recognized the urgency of that and granted a TRO. Finally, just with respect to streetwise maps, just a point I'd like to make on that, and I apologize, I'm not exactly sure of my time, because I think the time... So you have about another, why don't you take another minute? Yeah, the clock hasn't been switched. Okay, so with respect to streetwise maps, that illustrates a point that I was making about Venture's authority that was cited. In that case, the mark was not arbitrary. It was not as conceptually distinctive as the mark is in this case. In addition, as I recall, part of the reason that the mark in that case lacked commercial distinctiveness is because it was hemmed in by a lot of third-party uses, not necessarily because there was a lack of showing of the factors that the district court looked at in this case. If anyone is hemmed in by third-party uses here, it's Venture's. As we indicate in our brief, other parties have used the Woodstock mark for years, and what Venture's is trying to claim here is really rights in gross to that Woodstock mark, and under trademark law, you can't have rights in gross to a trademark. So unless the court has any other questions, I'm happy to answer otherwise. Thank you. Thank you very much, counsel. Thank you both. This was an enlightening argument. We will reserve decision. That concludes our calendar for oral argument this morning. The clerk will please adjourn court. Thank you, your honors. Court stands adjourned.